*(*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.   14-20347-CR-MIDDLEBROOKS**

**UNITED STATES OF AMERICA**

**vs.**

**RICHARD SHERIDAN,**

_____**Defendant.**_____/

## JOINT FACTUAL PROFFER

If this matter were to proceed to trial, the United States and the defendant, RICHARD SHERIDAN, agree that by photographs, documentary evidence, and the testimony of witnesses, the United States would establish the following beyond a reasonable doubt:

1.      The Endangered Species Act ("ESA"), Title 16, United States Code, Sections 1531 et seq., was enacted by Congress to conserve endangered and threatened species and the ecosystems upon which they depend. The term "endangered species" means any species, or part thereof, which is in danger of extinction throughout all or a significant portion of its range.   Title 16, United States Code, Section 1532(6).

2.      All species determined to be endangered under the ESA are listed in Title 50, Code of Federal Regulations, Section 17.11. Various species of rhinoceros have been listed under the ESA as early as 1970, and at all relevant times, five of the six extant species were included within its protection, to include the Black, Great Indian, Javan, Northern White, and Sumatran rhinoceros. The ESA makes it unlawful to knowingly deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever and in the course of a commercial activity,

*Court Exhibit #1*

endangered species of fish and wildlife, including rhinoceros; and to sell and offer to sell endangered species of wildlife, including rhinoceros, in interstate and foreign commerce, as set forth in Title 16, United States Code, Sections 1538(a)(1)(E) and (F) and 1540(b)(1). Federal regulations also require that, upon exportation of any wildlife, exporters or their agents must file with the U.S. Fish & Wildlife Service (FWS) a completed declaration for Importation or Exportation of Fish and Wildlife (Form 3-177), and that all wildlife exports must be cleared by an FWS officer. 50 C.F.R. § 14.61. The wildlife being exported, along with all required permits, licenses, and other documents must also be presented to the officer. 50 C.F.R. § 14.52.

3.      The term "fish or wildlife" as used in the ESA extends to any part, product, egg, or offspring thereof, or the dead body or parts thereof.   Title 16, United States Code, Section 1532(8).

4.      On April 18, 2012, RICHARD SHERIDAN and co-conspirator MICHAEL HEGARTY traveled from London, England, to Atlanta, Georgia, and on to Miami, Florida the following day.

5.      On April 25, 2012, SHERIDAN, HEGARTY, and a third individual, "KM," attended an auction in Rockingham, North Carolina. At the auction, KM was registered as a bidder, with the required personal information of KM being supplied to the auction house by HEGARTY. RICHARD SHERIDAN, however, actually functioned as the bidder during the auction process on behalf of the three individuals, and made the winning bid for a rhinoceros horn libation cup described as "Lot 463: Chinese Rhinoceros Horn Chilong Libation Cup," for $57,500, inclusive of a 15% buyer's premium.

6.     On May 3, 2012, KM, acting at the direction of MICHAEL HEGARTY and RICHARD SHERIDAN sent a wire transfer of $59,225 from a bank account in Miami, Florida, to the auction house in Rockingham, North Carolina, as payment for the items purchased on April 25, 2012.   On May 4, 2012, HEGARTY, who was then in Coconut Grove, Florida, had a telephone conversation with an employee of a Federal Express office in Hillsborough, North Carolina. HEGARTY instructed the employee to pick up the items purchased on April 25, 2012, including the rhinoceros horn libation cup, from the auction house in Rockingham, and to ship the items to an address in Florida.

7.     On May 7, 2012, the items purchased on April 25, 2012, including the rhinoceros horn libation cup, were received by RICHARD SHERIDAN and MICHAEL HEGARTY in Florida.

8.     HEGARTY and SHERIDAN assured KM, who had provided the funding for the purchase of the libation cup, that it was an excellent investment and that they were experienced in such transactions. They further advised that a flaw in the cup could be repaired and that they were associated with individuals in the United Kingdom who could effect the repairs and enhance the value of the libation cup. HEGARTY and SHERIDAN told KM they would take the cup to the United Kingdom for that purpose. HEGARTY stated that he would need to "make up documents" so that the rhinoceros horn libation cup would "make it through Customs and not pay taxes." KM and HEGARTY cut and pasted information to falsify an invoice.

9.     On May 16, 2012, RICHARD SHERIDAN smuggled the rhino horn libation cup out of the United States in his luggage, as he traveled from Miami, via Atlanta, to London, England. He failed to first declare the rhino horn libation cup as required by law to the U.S. Fish & Wildlife

Service and neither applied for nor obtained the permit required under the Endangered Species Act.

10.     On July 19, 2012, RICHARD SHERIDAN, along with two other Irish nationals, were arrested by Metropolitan Police in Wandsworth, London, while attempting to sell the same rhinoceros horn libation cup to a Hong Kong native. SHERIDAN, who claimed ownership of the item, also had the Lot tag from the auction house identifying the libation cup, as well as wrappings and other material from the North Carolina sales transaction.

11.     Subsequent scientific analysis of the libation cup seized in connection with the arrest of RICHARD SHERIDAN revealed that it was derived from a Great Indian rhinoceros.

### Conclusion

Based upon the foregoing, the United States and the Defendant respectfully submit that a reasonable jury would find that **RICHARD SHERIDAN** is guilty beyond a reasonable doubt of fraudulently and knowingly concealing and in any manner facilitating the transportation and concealment of a Libation Cup carved from an endangered Rhinoceros horn, prior to exportation, knowing the same to be intended for export contrary to any law and regulation of the United States, specifically Title 16, United States Code, Section 1538(c)(1) and the regulations promulgated thereunder, in violation of Title 18, United States Code, Sections 554 and 2.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:     _____

Thomas A. Watts-FitzGerald
Assistant United States Attorney
Florida Bar No. 0273538

4

Gary N. Donner
Trial Attorney
Environmental Crimes Section
U.S. Department of Justice

**Reviewed and agreed to:**

Date: _10/1/19_

By: _____
MANUEL GONZALEZ, JR., ESQ.
ATTORNEY FOR DEFENDANT

Date: _10 | 2 0 1 -9_

By: _____
RICHARD SHERIDAN
DEFENDANT

5